**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**CHARLESTON DIVISION**

| | |
|---|---|
| Cynthia Kitchens, | C/A No.: 2:16-cv-03723-RMG-MGB |
| Plaintiff, | **DEFENDANT THE BOEING COMPANY'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| The Boeing Company, | |
| Defendant. | |

Defendant The Boeing Company ("Defendant" or "Boeing") hereby moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on Plaintiff's claims and submits this Memorandum in Support of its Motion for Summary Judgment.

## I.    INTRODUCTION

Boeing employed Plaintiff Cynthia Kitchens ("Plaintiff" or "Kitchens") as a first level quality manager from June 18, 2010, until her voluntary resignation on June 30, 2016. Throughout her short career, Ms. Kitchens reported to several different supervisors, most of whom evaluated her as needing improvement in various performance areas. Her last supervisor, Ron Pentz, met with her to discuss her performance and followed up with her on Friday, June 9, 2016, to discuss his intention of addressing her deficiencies in a future Performance Improvement Plan ("PIP"). Immediately thereafter, Ms. Kitchens went on a previously planned vacation and took additional leave, which Boeing approved, beginning Monday, June 13 through June 27, 2016. Ms. Kitchens returned to work on June 28, 2016, and tendered her voluntary resignation from Boeing on June 30, 2016, prior to Mr. Pentz issuing and/or implementing her PIP.

Ms. Kitchens subsequently filed this lawsuit, alleging that Boeing constructively discharged her based upon the impending PIP. Notably, Ms. Kitchens never saw a copy of the PIP, much less gave the PIP a chance to help her improve her performance, prior to her voluntary resignation. Nevertheless, Ms. Kitchens asserts six claims against Boeing under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). Boeing respectfully requests that the Court grant summary judgment because Ms. Kitchens' allegations are without merit and not supported by the evidence and/or applicable law.

## II.    STATEMENT OF UNDISPUTED FACTS

The following facts are established by the pleadings, affidavits, exhibits, and documents produced during discovery, relevant portions of which are cited to and attached as exhibits.

Boeing hired Ms. Kitchens as a Product Quality Manager K, which is a first line manager, at its North Charleston, South Carolina facility on June 18, 2010. (Compl. ¶¶27-29, Entry # 1-1). She was reclassified as a Quality Multi-Family Manager K, also a first line manager position, on May 20, 2011, which she held until her voluntarily resignation on June 30, 2016. (*Id.*; Cynthia Kitchens Depo. p. 96, ll. 2-5, p. 246, ll. 1-25, attached as Exhibit A; Resignation Letters, attached as Exhibit B).[1]

### A.    Kitchens' Performance was Historically Poor.

Ms. Kitchens was responsible for a team of Product Acceptance Specialists on the third shift. Throughout her career, she reported to several different supervisors, each of whom evaluated her on an interim and year-end basis, known as a Performance Management Evaluation ("PM"). In her PMs for 2014 and 2015, prior to her voluntary resignation, Ms. Kitchens received

---

[1] All references to Ms. Kitchens' deposition are attached as Exhibit A.

particularly low scores, between "15" and "16", noting the need for improvement in various leadership attributes. (Kitchens Depo. p. 148, l. 13 – p. 150, l. 25; p. 151, ll. 12-25; p. 165, l. 12-p. 166, l. 13; 2014-2015 PM Evaluations, attached as Exhibit C). Stephen Parrinello supervised Ms. Kitchens during most of this time period. He gave Ms. Kitchens a score of "15" on her year-end PM for 2014, noting several areas for improvement because "we were having a lot of problems with her." (*Id.*; Parrinello Depo. p. 32, l. 14 – p. 33, l. 23, attached as Exhibit D). Interestingly, Ms. Kitchens was admittedly surprised by the score because it was better than she thought she would receive. (Kitchens Depo. p. 150, ll. 9-25). Mr. Parrinello gave Ms. Kitchens a "16" on her 2015 interim PM, again noting the need for improvement. (Parrinello Depo. p. 40, l. 18 – p. 41, l. 3; Haskell Depo. p. 11, ll. 2-11, attached as Exhibit E; Exhibit C). Ms. Kitchens did not complain to anyone at Boeing about the evaluation or her PM scores from Mr. Parrinello.

**B.     Ms. Kitchens Was Not Qualified or Not the Most Qualified for the Three Jobs for which She Applied.**

In 2015, Ms. Kitchens applied for three positions with Boeing: a Supplier Quality Manager K; a Quality Manager K; and a Flight Line Operations Manager L. (Compl. ¶¶ 41; 44 and 46).[2] Boeing did not select Ms. Kitchens for any of the positions, either because she was not qualified or was not the most qualified candidate. (Pizzi Decl., attached as Exhibit F). Ms. Kitchens admits that she has little to no information regarding the candidates who were selected for the positions and does not know who the hiring managers were for any of the positions. (Kitchens Depo. p. 271, l. 2 – p. 274, l. 21).

Ms. Kitchens applied for the position of Supplier Quality Manager K on July 29, 2015.

---

[2] The title for the three positions at issue as referenced in Ms. Kitchens' Complaint vary slightly from the actual title for the position provided in Boeing's job postings. There is no dispute regarding the three positions at issue. Thus, to avoid confusion, the title on the official job postings are used throughout this Memorandum.

(Pizzi Decl. ¶ 6). Three hundred and thirty six (336) applicants submitted their applications and resumes for this position. (*Id.*)  A Boeing recruiter determined that the skills and experience listed by Ms. Kitchens on her application and resume were insufficient to warrant referral to the hiring manager for further consideration. (*Id.*)  Ultimately, the best qualified applicant was hired for the position. (*Id.*)

Likewise, one hundred and ninety two (192) individuals submitted applications and resumes for the Quality Manager K position. (*Id.* ¶ 7).  Ms. Kitchens met the minimum requirements for this position.  As such, her application and resume were forwarded to the hiring manager, Kimberly Blankenship, for consideration. (*Id.*)  In addition to Ms. Kitchens' application and resume, forty (40) other applications and resumes were forwarded to Ms. Blankenship for consideration. (*Id.*)  After reviewing all submissions, Ms. Blankenship did not select Ms. Kitchens, or thirty two (32) other applicants, for an interview. (*Id.*).

Ultimately, Ms. Blankenship hired Gregg Paparello as the best qualified for the position. Mr. Paparello had been a first line manager in the production assembly area for five (5) years and held a Bachelor of Science degree. (*Id.*) In fact, during her deposition Ms. Kitchens agreed that Mr. Paparello was correctly hired for the position: "I totally understand why he got it.  I agreed." (Kitchens Depo. p. 271, l. 25 – p. 272, l. 10).

On October 13, 2015, Ms. Kitchens applied for the position of Flight Line Operations Manager L.  One hundred and twenty five (125) applicants submitted resumes for this position. (*Id.* ¶ 9).  A Boeing recruiter reviewed Ms. Kitchens' resume and determined that she lacked the requisite skills and experience to warrant referral to the hiring manager for further consideration. (*Id.*)  The best qualified candidate was hired for this position. (*Id.*).

**C.    Ms. Kitchens' Conflict with Co-Worker Tracy Darnell Was Not Based on Any Protected Category.**

In the fall of 2015, Ms. Kitchens and Tracy Darnell, a female temporary first level manager in her department on a different shift, each made complaints to Boeing's Human Resources department about the other regarding a variety of issues, including the tool cage and trash being left on desks. (Kitchens Depo. p. 186, l. 15- p. 195, l. 8). Importantly, Ms. Kitchens did not contend or complain that any of the issues with Ms. Darnell pertained to her gender, age or any disability. After an investigation, both employees were issued verbal warnings, the first step in Boeing's corrective action process. (Kitchens Depo. p. 192, l. 24-p.195, l. 8; Parrinello Depo. p. 36, ll. 2-22). Ms. Darnell was also subsequently moved to another department shortly thereafter. (Kitchens Depo. p. 195, ll. 1-8; Stephen Parrinello Depo. p. 36, ll. 19-22).

**D.    Ms. Kitchens' Complaint About Her Raise in 2016 Was Unfounded.**

In the spring of 2016, Ms. Kitchens complained that she only received a $600.00 raise, and that one of her male co-workers thought that seemed low and that another male co-worker told her he received the same raise he had gotten the previous year. (Kitchens Depo. p. 212, l. 9 – p. 213, l. 12; Investigation Closure, attached as Exhibit G). However, Ms. Kitchens' complaint was factually inaccurate. (*Id.*) Boeing's internal Equal Employment Opportunity department thoroughly investigated her complaint and explained to Ms. Kitchens that she received a $1,862 salary increase on March 4, 2016, which was a higher increase than she realized she had received. (*Id.*) Ms. Kitchens indicated she was satisfied with the results of the investigation, and her complaint was closed as unsubstantiated.[3] (*Id.*)

---

[3] Ms. Kitchens has not engaged in any discovery attempting to show that Boeing compensated males more favorably than her.

**E.    Ms. Kitchens' Resigned Voluntarily Before Any PIP was Issued or Implemented.**

Mr. Parrinello contemplated putting Ms. Kitchens on a PIP given her low PM scores, specifically discussing it with Boeing's Human Resources department. (Parrinello Depo. p. 34, l. 23 – p. 35, l. 13). However, he chose not to issue the PIP because he was transferring departments, would no longer be supervising Ms. Kitchens, and therefore would not be able to implement and monitor her progress. (*Id.*; Parrinello Depo p. 39, ll. 3-20).

After Mr. Parrinello moved departments, Rocky Haskell began managing Mr. Parrinello's direct reports, which consisted of second and third shift employees, including Ms. Kitchens as a third shift manager. (Haskell Depo. p. 8, ll. 15-21). Mr. Haskell only supervised Ms. Kitchens for two months in 2016 before she was transferred to report to Mr. Pentz, Senior Quality Manager and first shift supervisor. (*Id.*; Pentz Depo. p. 17, l. 22 – p. 18, l. 12, attached as Exhibit H).[4]

Mr. Pentz met with Ms. Kitchens in early June of 2016 to discuss a number of ongoing performance issues. (Pentz Depo. p. 23, l. 15 – p. 24, l. 25, p. 48, ll. 17-21; Pentz Meeting Notes, attached as Exhibit I). His concerns regarding Ms. Kitchens included unclear communications, managing conflict with her employees, and lack of understanding her scope of work. (Pentz Depo. p. 20, l. 1 – p. 24, l. 3). Mr. Pentz reviewed the last few years of Ms. Kitchens' PMs and consulted with Boeing's Human Resources department and his supervisor, Keith Castleberry, about the prospect of putting Ms. Kitchens on a PIP. (Pentz Depo. p. 26, l. 20 – p. 27, l. 6; p. 32, ll. 1 – 8).

On June 9, 2016, Mr. Pentz met with Ms. Kitchens to discuss creating a PIP for her. (*Id.*). He believed Ms. Kitchens could improve her performance and was optimistic that "if we documented everything she was working on and worked through it together, [her performance

---

[4] Third shift L-level managers typically report to first shift supervisors at Boeing. This move aligned Ms. Kitchens to that reporting structure. (*Id.*)

deficiencies] would definitely have been resolved." (Pentz Depo. p. 40, l. 7 – p. 41, l. 2). Ms. Kitchens then went on a previously planned cruise with her grandson and took some additional leave, which Boeing approved, beginning Monday, June 13 through June 27, 2016. (Kitchens Depo. p. 228, l. 18 – p. 229, l. 12; Email dated June 1, 2016, attached as Exhibit J). She returned to work on June 28, 2016, and tendered her voluntary resignation two days later, prior to Mr. Pentz issuing and/or implementing her PIP. (Kitchens Depo. p. 243, l. 6-p. 245, l. 15; Exhibit B).

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The moving party bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence supporting the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (finding that judges have "an affirmative obligation" to prevent factually unsupported claims from going to trial).   When this burden is met, the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial.   *Celotex*, 477 U.S. at 322-23; *Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992).

The non-moving party must "go beyond the pleadings" and from the evidence "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted).   "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *EEOC v. Clay Printing Co.,* 955 F.2d 936, 943 (4th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).   Because there is no genuine issue as to any material fact regarding

any of Ms. Kitchens' claims, Boeing is entitled to summary judgment, and this lawsuit should be dismissed.

## IV.  LEGAL ANALYSIS

Ms. Kitchens is claiming Boeing violated Title VII of the Civil Rights Act of 1964, because of her gender; the Age Discrimination in Employment Act of 1967 (ADEA), because of her age; and the Americans with Disabilities Act (ADA), because of her perceived disability from a previous cancer diagnosis and treatment.  In addition, she claims she was retaliated against for alleged complaints she made under these statutes. Ms. Kitchens has asserted six causes of action which generally fall under three theories: (1) constructive discharge, based upon an alleged hostile work environment; (2) disparate treatment because of her gender, age and disability; and (c) retaliation.

For each purported claim, Ms. Kitchens must overcome the burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as she has no direct evidence Boeing discriminated against her.  *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000) (applying *McDonnell Douglas* not just to Title VII claims but also to ADEA claims).  Under *McDonnell Douglas*, Ms. Kitchens first must establish a prima facie case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  If she meets that burden, it only gives rise to an inference of discrimination, and Boeing may provide its legitimate non-discriminatory reason for its actions.  *See id.* at 802–04.  Importantly, Boeing's burden is only one of production, not persuasion.  *Reeves*, 530 U.S. at 142–43.

After Boeing provides evidence of its non-discriminatory reasons for any actions, Ms. Kitchens bears the ultimate burden of persuasion and must show, by a preponderance of the evidence, that the proffered reasons were pretext for discrimination.  *Id.*  Importantly, this pretext

analysis does not convert Title VII, ADEA or ADA claims into a vehicle for challenging allegedly unfair—but nondiscriminatory—employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Moreover, conclusory allegations by Ms. Kitchens, without more, are insufficient to preclude the granting of Boeing's motion summary judgment. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (finding conclusory allegations are insufficient to support a finding of pretext).

In light of these standards, Boeing is entitled to summary judgment because Ms. Kitchens has failed to establish a prima facie case for any of the claims she is asserting, and, in any event, Boeing has shown the legitimate, non-discriminatory reasons for any of its actions.

### A.    Boeing is Entitled to Summary Judgment on Kitchens' Hostile Work Environment and Constructive Discharge Claims.

Ms. Kitchens alleges Boeing discriminated against her because of her gender, age and disability by creating a hostile work environment and constructively discharging her in violation of Title VII, the ADEA and the ADA.  (Compl. ¶¶ 45, 53, 54 – 58, 130-132).  However, she voluntarily resigned from her employment with Boeing and cannot establish a hostile work environment or constructive discharge.  Accordingly, summary judgment is appropriate.

1.    <u>No Hostile Work Environment.</u>

Ms. Kitchens contends that Boeing created a hostile work environment in violation of Title VII, the ADEA and the ADA.  For the reasons set forth below, her conclusory allegations hardly constitute cognizable claims, as she has not established even one of the prima facie elements of a hostile work environment claim under Title VII, the ADEA and ADA.

To state a claim for hostile work environment under Title VII, the ADEA and the ADA, Ms. Kitchens must show that: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her gender, age or disability; (3) the harassment was sufficiently severe or pervasive

to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Bell v. Shulkin*, No. 17-1092, 2017 WL 4074541, at *2 (4th Cir. Sept. 14, 2017) (stating the elements for hostile work environment based on disability); *Melendez v. Bd. of Educ. for Montgomery Cty.*, No. 17-1116, 2017 WL 4512169, at *3 (4th Cir. Oct. 10, 2017) (stating the elements for hostile work environment based on gender); *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (stating the elements of hostile work environment based on age); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (citation omitted) (stating the elements for hostile work environment based on gender; *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001) (stating the elements for hostile work environment based on disability which parallel the Title VII elements); *see also EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313–14 (4th Cir. 2008) (stating generally the elements for a hostile work environment claim under Title VII).

        a.    *Ms. Kitchens was not subjected to unwelcome harassment because of gender, age or disability.*

Ms. Kitchens' purported hostile work environment claims fail at the very outset as she cannot establish the first or second elements of her claims. She has not asserted any factual allegations, much less provided evidence, that she was subjected to harassment or that it was unwelcome, nor has she factually alleged or established that any purported conduct was harassment because of her gender, age or disability.

In her Complaint, Ms. Kitchens outlines her allegations for a hostile work environment, making repeated, conclusory allegations:

        45.    In August of 2015 the Plaintiff was harassed and intimidated by a temporary manager, Tracy Darnell.

        53.    That after the supervisor began to substantiate the Plaintiff's

performance the Plaintiff was immediately transferred to a younger male employee
who immediately began to harass, badger and threaten to discipline the Plaintiff.

54.    The Plaintiff's supervisor at the time was Ron Pentz. Mr. Pentz had
a reputation for discriminating against older individuals and using his position to
push older individuals out of the company and their positions.

55.    Mr. Pentz threatened the Plaintiff with unwarranted discipline. That
at all times the Plaintiff was performing her position to the specification of her
employer.

130.    That the Defendants [sic] subjected the Plaintiff to a hostile work
environment.

131.    That the Plaintiff's work environment was abusive, to the point of
severe and pervasive.

132.    That the Plaintiff was subjected to discrimination based on her Age,
Sex and disability.

(Compl. at ¶¶ 45, 53, 54, 55, 130-132). Ms. Kitchens provided little to no testimony in her
deposition and has no other evidence otherwise to support any of these vague allegations.

As an initial matter, none of these allegations—even on their face—suggest alleged
harassment on the basis of Ms. Kitchens' gender or disability. Indeed, the only reference to alleged
harassment on the basis of gender or disability occurs in paragraph 132, wherein Ms. Kitchens
summarily alleges she was discriminated against on the basis of her sex and disability. However,
Ms. Kitchens has provided no testimony or other record evidence supporting this allegation,
despite having ample opportunity to do so during the discovery of this case. This bald allegation—
which is not supported by any record evidence—is insufficient to establish a hostile work

11

environment based upon gender or disability.

In her Complaint, Ms. Kitchens also fails to identify any protected category when she alleges she was "harassed" and "intimidated" by temporary manager, Tracy Darnell. (Compl. ¶ 45.) The reason for Ms. Kitchens' pleading deficiency became apparent during her deposition, when she testified that the alleged "harassment" by Ms. Darnell pertained to an on-going dispute over a variety of work issues—such as trash being left on desks—wholly unrelated to any protected category. (Kitchens Depo. p. 186, l. 15- p. 195, l. 8). Likewise, Ms. Kitchens never complained to anyone at Boeing that her issues with Ms. Darnell remotely pertained to her gender, age or disability. As a result, Ms. Kitchens' allegations and testimony do not establish any unwelcome harassment based on any protected category.

The only allegation in the Complaint referencing alleged harassment because of a protected category is Ms. Kitchens' claim that, "Mr. Pentz had a reputation for discriminating against older individuals and using his position to push older individuals out of the company and their positions." (Compl. ¶ 54). However, Ms. Kitchens was unable to offer any such supporting testimony during her deposition. Instead, she summarily testified in her deposition that Mr. Pentz wanted to put her on a PIP to force her out of the company. (Kitchens Depo. p. 220, l. 23-p. 222, l. 17). However, the undisputed facts show that Mr. Pentz has only issued two PIPs to employees in his career. (Pentz Depo. p. 26, ll. 16-19). Mr. Pentz's extremely limited use of PIPs hardly evidences a "reputation for discriminating against older individuals" or "using his position to push older individuals out of the company."[5] Ms. Kitchens' conclusory statement, without more, is wholly insufficient, as a matter of law, to establish a hostile environment claim based upon age or

---

[5] Ms. Kitchens has not engaged in any discovery seeking to determine the ages of terminated employees reporting to Mr. Pentz.

any other protected category.

Even if Ms. Kitchens could establish that any of these allegations amounted to unwelcome harassment, which she cannot, the record is devoid of any suggestion that any purportedly harassing conduct was because of her gender, age or disability. An employee is harassed or otherwise discriminated against "because of" her protected status if, "but for" the employee's protected status, she would not have been the victim of the alleged discrimination. *See e.g., Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) ("This Court has held that in order to prove the second element, a plaintiff must show that 'but for' the employee's sex [disability, or protected activity], . . . she would not have been the victim of discrimination.") (internal quotation and citation omitted). A plaintiff alleging harassment "can succeed only by showing that she is the individual target of open hostility because of her [protected status]," not simply alleging that "she was the target of open hostility." *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008) (internal quotation and citations omitted) (emphasis added).

Here, Ms. Kitchens has not alleged and cannot establish that Ms. Darnell, Mr. Pentz or anyone else targeted her with hostility *because of* her gender, age or disability. The Fourth Circuit has consistently dismissed, as a matter of law, harassment claims where the plaintiff has neither alleged nor shown that the purported harassment was because of the plaintiff's protected status. In *Bass v. E.I. Dupont de Nemours & Co.*, the plaintiff, who was older than 40, had her duties reassigned because of performance issues, but alleged that the reassignment equated to harassment based on her age. 324 F.3d 761, 765 (4th Cir. 2003), *cert. denied*, 540 U.S. 940 (2003). Like here, the plaintiff in *Bass* never indicated the alleged harassment was based on her age. *Id.* at 763. In granting summary judgment, the Court noted that the facts failed to establish a prima facie case and merely told the story of a workplace dispute that did not rise to gender-, race- or age-based

conduct necessary to proceed to trial. *Id.* at 765; *see also Davis v. Coastal Inter'l Sec., Inc.*, 275 F.3d 1119, 1123 (D.C. Cir. 2002) (explaining in a case involving a sexual harassment claim that the plaintiff's "own testimony conclusively shows that [the harassers] were motivated by a workplace grudge, not sexual attraction").

The same holding is appropriate in this case. Whether she felt mistreated or even harassed, Ms. Kitchens has not alleged any facts or otherwise come forward with any record evidence establishing that any purported harassment was because of her gender, age or disability, whether based on the purported allegations outlined above, any other allegations in the Complaint, or through some evidence in the record. Consequently, while Ms. Kitchens is a female, older than 40 and has alleged a disability, nothing suggests she was subjected to alleged harassment because of those protected traits. This precludes any hostile environment claim, and Boeing is entitled to summary judgment.

      b.     *Ms. Kitchens was not subjected to conduct sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive atmosphere.*

Even assuming, for purposes of argument alone, that Ms. Kitchens has raised a genuine dispute of material fact with regard to the first two elements, which she has not, her hostile work environment claim still clearly fails on the third element: severity and pervasiveness. *See Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006). With regard to the third element, Ms. Kitchens must show that the severity or pervasiveness of any purported harassment was not just offensive to her, but was objectively abusive as measured by a reasonable person. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (*quoting Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). To determine if there was an objectively hostile environment, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically

14

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (internal quotation omitted)).

Here, any conduct alleged by Ms. Kitchens falls far short of meeting this element. Ms. Kitchens' generalized allegations do not amount to a threatening or abusive work environment, nor did they unreasonably interfere with her work performance. As such, they are insufficient to support a hostile work environment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("Properly applied, [workplace discrimination laws] will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [protected status]-related jokes, and occasional teasing.").

Ultimately, Ms. Kitchens has failed to provide any evidence in support of her hostile work environment claims, much less evidence sufficient to clear the "high bar" necessary to establish severe or pervasive conduct. *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009). Accordingly, her hostile work environment claims fail, as a matter of law.

    c.     *Ms. Kitchens has not alleged any basis for holding Boeing liable.*

Finally, Ms. Kitchens cannot demonstrate that liability for any alleged gender, age or disability discrimination should be attributed to Boeing. Her hostile work environment claims fail on the fourth element because there is no basis for holding Boeing liable. To hold an employer liable for the conduct of an employee, a plaintiff must demonstrate that the employer "knew or should have known about the harassment and failed to take effective action to stop it." *Sunbelt Rentals*, 521 F.3d at 319. In this case, the only allegation wherein Ms. Kitchens raised a complaint was regarding her co-worker, Ms. Darnell. Notwithstanding that the dispute between Ms. Kitchens and Ms. Darnell did not pertain to any protected category and did not amount to a hostile work

environment, Boeing immediately addressed the peer-to-peer dispute, with Ms. Darnell ultimately moving to a different location. *See Mikels v. City of Durham*, 183 F.3d 323, 332 (4th Cir. 1999) (affirming employers are only liable for own negligence if they have notice of alleged harassment and failed to take "prompt and adequate action."). Because Boeing took prompt remedial action, there is no basis for imposing liability on Boeing, and Ms. Kitchens' hostile work environment claims fail as a matter of law.

      2.    <u>Ms. Kitchens was not Constructively Discharged</u>.

The constructive-discharge doctrine contemplates a most egregious situation in which an employer discriminates against an employee because of a protected trait to the point that "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). When the employee resigns in the face of such circumstances, Title VII and other anti-discrimination laws treat that resignation as tantamount to an actual discharge. *Id.* at 142–43.

Importantly, the United States Supreme Court has expressly held that a hostile work environment claim is a "lesser included component" of the "graver claim of hostile-environment constructive discharge." *Id.* at 149. Consequently, Ms. Kitchens first must establish all of the legal standards of a hostile work environment claim, then she also must show that Boeing created intolerable working conditions in a deliberate effort to force her to resign. *See Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353–54 (4th Cir. 1995).

Ms. Kitchens alleges that her supervisor, Mr. Pentz, threatened unjustifiably to put her on a PIP. However, notwithstanding the legitimate reasons for considering a PIP based upon Ms. Kitchens' history of poor performance, the Fourth Circuit consistently rejects allegations involving "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or

unpleasant working conditions" as coming anywhere near the necessary threshold. *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (internal quotation and citation omitted). Furthermore, the Fourth Circuit has repeatedly rejected considerably more difficult working conditions as falling below the standard for a constructive discharge claim. For example, allegations that supervisors yelled at a plaintiff, gave her poor evaluations, told her she was an incompetent manager, criticized her in front of customers, and insisted that she work with an injury, even if true, failed to establish a constructive discharge claim. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004); *see also Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 294–95 (4th Cir. 2006) (finding a plaintiff failed to present sufficient evidence of intolerable working conditions where the employer forced plaintiff's son to resign, threatened plaintiff with loss of certain benefits if he refused to retire, told some of plaintiff's coworkers that he was going to be terminated, and disconnected plaintiff's access to the employer's computer system).

Moreover, Ms. Kitchens must show Boeing's alleged actions forcing her purported resignation was *because of* her protected status, whether it be gender, age or disability. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) ("Although [plaintiff's] motivation to look for alternative employment may have been based on his impression of his future prospects at [his employer], there is no evidence that those conditions were intentionally created to force [plaintiff] out because of race or otherwise."). For the reasons previously set forth herein, Ms. Kitchens cannot satisfy this burden because she does not possess any record evidence even suggesting that her impending PIP was being issued because of her gender, age or disability.

As set forth above, Ms. Kitchens cannot meet the legal standard establishing a hostile work environment claim under Title VII, the ADEA or the ADA and, even if she could, there is no basis for imputing liability to Boeing. Consequently, Ms. Kitchens cannot establish an even graver work

17

situation so as to amount to a discriminatory constructive discharge. *Pennsylvania State Police*, 542 U.S. at 149. Accordingly, Ms. Kitchens' voluntary resignation from Boeing does not amount to a constructive discharge, and Boeing is entitled to judgment as a matter of law.

**B.    Boeing is Entitled to Summary Judgment on Ms. Kitchens' Disparate Treatment Claims under Title VII, the ADEA and ADA.**

Ms. Kitchens also contends Boeing discriminated against her by treating her disparately because of her gender, age and disability in violation of Title VII, the ADEA and the ADA. These claims also fail, as Ms. Kitchens has not established, and cannot establish, all of the prima facie elements of a disparate treatment claim, and because Boeing had legitimate, non-discriminatory reasons for its actions.

1.    Ms. Kitchens Cannot Establish a Prima Facie Case of Disparate Treatment Based Upon the Alleged Failure to Hire Her for Certain Positions.

Ms. Kitchens' claims of disparate treatment primarily involve her allegations that she was not hired for various positions at Boeing. To establish a prima facie case for discriminatory failure to hire under Title VII, the ADEA or the ADA, Ms. Kitchens must prove that: "(1) [s]he is a member of a protected class; (2) [s]he applied for the position; (3) [s]he was qualified for the position; and (4) [her] application was rejected 'under circumstances that give rise to an inference of unlawful discrimination.'" *Byers v. Alamance Cty.*, 633 F. App'x 135, 136 (4th Cir. 2016) (quoting *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 268 (4th Cir. 2005)); *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802 (1973)); *Lisotto v. New Prime, Inc.*, No. CA 3:13-2407-MGL-PJG, 2014 WL 4264838, at *2 (D.S.C. July 22, 2014), *report and recommendation adopted in part*, No. CIV.A. 3:13-2407-MGL, 2014 WL 4269086 (D.S.C. Aug. 28, 2014), *vacated and remanded*, 647 F. App'x 259 (4th Cir. 2016) ("To establish a prima facie case of discriminatory failure to hire based upon

a disability, a plaintiff must show that he (1) is disabled within the meaning of the ADA; (2) applied for the vacant position; (3) was qualified for the position; and (4) was rejected for the position under circumstance giving rise to an inference of unlawful discrimination.") (internal citations omitted); *see also Gurganus v. Beneficial N. Carolina, Inc.*, 25 F. App'x 110, 111 (4th Cir. 2001) (discussing similar elements for a failure to promote case under the ADEA).

Although Ms. Kitchens broadly alleges she applied for 14 different positions in 2015, she has identified only three specific positions in her Complaint and deposition testimony. Specifically, Ms. Kitchens alleges she applied and was not selected for a Supplier Quality Manager K position in August 2015; a Quality Manager K position in July 2015; and a Flight Line and Quality Manager L position in August 2015. (Compl. ¶¶ 41, 44, 46). Although the application dates vary somewhat, Ms. Kitchens testified in her deposition that she applied and was not selected for these positions. (Kitchens Depo., p. 271, l. 15-24; p. 273, ll. 1-7; p. 274, l. 22-p. 275, l. 1; p. 275, l. 25-p. 276, l. 9).

> a.    *Ms. Kitchens Cannot Show that she was Qualified or the Most Qualified for the Positions.*

As set forth in detail above, Ms. Kitchens was not selected for any of the positions, either because she was not qualified or was not the most qualified candidate. (Exhibit F). Indeed, Ms. Kitchens admits that she has little to no information regarding the candidates who were selected for the positions, including their respective qualifications, and does not know who the hiring managers were for any of the positions. (Kitchens Depo. p. 271, l. 2 – p. 274, l. 21). Accordingly, her claim fails because she cannot show that her qualifications "were so plainly superior that [Boeing] could not have preferred another candidate." *Popoli v. Bd. of Trustees of Harford Cmty. Coll.*, No. JFM-16-00452, 2017 WL 4457153, at *3 (D. Md. Oct. 4, 2017).

19

Moreover, although Ms. Kitchens may believe she was qualified or the most qualified for the three positions at issue, "[i]t is the perception of the decision maker which is relevant, not the self assessment of the plaintiff." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996). "Courts do not operate as super-personnel department[s] determining whether [an employer's] perception of an employee's qualifications is erroneous." *Popoli*, 2017 WL 445713, at *3 (internal citation and quotation omitted).    Under these circumstances, Ms. Kitchens cannot make out a prima facie case of discriminatory failure to hire.

        b.     *Ms. Kitchens Has No Evidence That Her Applications for the Three Positions at Issue were Rejected Under Circumstances That Give Rise to an Inference of Unlawful Discrimination.*

In addition, Ms. Kitchens has no evidence that her applications were rejected under circumstances that give rise to an inference of unlawful discrimination for the above-mentioned three positions.  Notably, Ms. Kitchens acknowledged in her deposition that the individual hired for the Quality Manager K position at issue was best qualified for the position:

| | |
|---|---|
| Q. | Okay.  Do you know how many people applied for that position? |
| A. | No.  But I know the guy who got it, and he was qualified. |
| Q. | He was qualified? |
| A. | I asked, and he was qualified. |
| Q. | Okay.  And what was his name? |
| A. | Steve -- I don't know the last name now, but when they -- or Greg?    Was it Greg?  Sorry.  When they told me, I said, oh, okay, I totally understand why he got it.    I agreed. |
| Q. | Okay. |

(Kitchens Depo. p. 271, l. 25- p. 272, l. 10).

Likewise, Ms. Kitchens has no evidence to suggest any discriminatory treatment with regard to the other two positions at issue.  In fact, Ms. Kitchens has very little knowledge as to the candidates that were hired for any of the three positions at issue.  For example, she did not know how many people applied for either of the K-Level Manager positions in April 2015 or in July

2015, their qualifications, or even the names of the candidates hired for the positions. (Kitchens Depo. p. 271, l. 2-p. 274, l. 21). As for the Flight Line Manager, Ms. Kitchens only knew the name of one of the persons who filled two open positions for that role. (Kitchens Depo. p. 276, ll. 12-19). She did not know how many people applied for the positions, nor did she know the PM scores of any of the candidates who made it on the "short list" for the two positions, which she acknowledged would be relevant in the hiring decision. (Kitchens Depo. p. 277, l 24-p. 278, l. 20; p. 287, ll. 4-7).

Nevertheless, Ms. Kitchens contends that she was not hired for the two open spots for the Flight Line Position because of her gender, based upon—at best—a stray comment made by Mr. Parrinello, who was not even the hiring manager for the positions. Specifically, Ms. Kitchens claims that Mr. Parrinello told her to be happy she was not selected because she would not want to be walking around in the heat all the time and because two men were hired for the positions. (Kitchens Depo. p. 283, l. 13-p. 284, l. 16). It is unclear how this alleged, off-hand comment supports an interference that Ms. Kitchens was subjected to unlawful gender discrimination. Regardless, even a factually relevant stray comment by Mr. Parrinello would not amount to gender discrimination. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions . . .").

In fact, even Ms. Kitchens admitted in her deposition she was drawing an unfounded conclusion tying her non-hire to her gender. (Kitchens Depo. p. 283, l. 13-284, l. 16). Based on the forgoing, there is no genuine issue of material fact as to whether Ms. Kitchens was a victim of intentional gender discrimination. *Bryan v. Prince George's Cnty.,* 484 Fed. App'x. 775, 776 (4th Cir. 2012); *Ferguson v. Waffle House, Inc.*, 18 F. Supp. 3d 705, 711 (D.S.C. 2014) ("[W]hen,

as here, the record contains no evidence of intentional discrimination other than the plaintiff's conclusory statements, the Court finds that there is no genuine issue of material fact as to whether the plaintiff was a victim of disparate treatment."); *Gilyard v. S.C. Dep't of Youth Servs.*, 667 F. Supp. 266, 271 (D.S.C. 1985) ("[P]laintiff must have some cold, hard facts from which a reasonable inference of discrimination can be made. Where no such facts exist, and guesswork or speculation would be required to find discrimination, the plaintiff has not met his burden of establishing a prima facie case.").

Similarly, Ms. Kitchens has no evidence to support her claim that she was not hired for any position because of her disability or age. Ms. Kitchens contends that Mike Tidmore made a statement suggesting she was not hired for any position based on her disability or age. (Kitchens Depo. p. 30, l. 1-p. 34, l. 16; p. 284, l. 25-p. 285, l.4; Compl. ¶ 40). However, Mr. Tidmore was not the hiring manager for any of the jobs for which Ms. Kitchens applied. (Kitchens Depo. p. 39, ll. 15-25; p. 40, ll. 4-11). Moreover, the circumstances describing the selection process above, show that neither Ms. Kitchens' gender, age nor disability played any role whatsoever in the hiring decisions. *See Yarnevic v. Brink's Inc.*, 102 F.3d 753, 757–58 (4th Cir. 1996) (holding that remote inferences and conclusory allegations cannot defeat summary judgment); *Nichols v. Caroline Cnty. Bd. of Educ.*, 123 F.Supp.2d 320, 327 (D. Md. 2000) (holding that plaintiff's contention that supervisors subjected him to adverse employment actions "because I am who I am" was insufficient to establish [a discriminatory] character to their disagreements and misunderstandings).

In short, Ms. Kitchens has no evidence suggesting her gender, age or disability had anything to do with Boeing's decision not to hire her for other positions. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 815 (6th Cir. 1999), *cert. denied*, 530 U.S. 1262 (2000) ("Without

a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief. . . .).  Accordingly, Boeing is entitled to summary judgment on all of her claims.

    2.    <u>Ms. Kitchens cannot overcome Boeing's stated legitimate non-discriminatory reasons for its actions.</u>

Ms. Kitchens was not selected for the Supplier Quality Manager K position, the Quality Manager K position, or the Flight Line Operations Manager L in 2015 because she lacked the requisite skills and experience for two of the positions and a more qualified candidate was hired for the third position.  (Exhibit F).  Once Boeing produces sufficient evidence to support a nondiscriminatory explanation for its decision, Ms. Kitchens is afforded "the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (internal quotations and citations omitted). "That is, the plaintiff may attempt to establish that [she] was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Id.*

Here, however, Ms. Kitchens has provided no evidence indicating that Boeing's proffered reason for hiring a more qualified candidate over her was false.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (holding that plaintiff must show "both that the [defendant's] reason was false, and that discrimination was the real reason").  Therefore, summary judgment should be granted in favor of Boeing.

**C.    Boeing is Entitled to Summary Judgment on Ms. Kitchens' Retaliation Claim.**

Finally, Ms. Kitchens alleges she was retaliated against in violation of Title VII, the ADA and the ADEA.  To state a prima facie case of retaliation under Title VII, the ADA or the ADEA, Ms. Kitchens must show "(1) she engaged in a protected activity; (2) the employer took a materially adverse action against her; and (3) there is a causal connection between the protected

23

activity and the adverse action." *See e.g. Mascone v. Am. Physical Soc'y, Inc.*, 404 F. App'x 762, 765 (4th Cir. 2010) (combining the old elements of *King v. Rumsfeld*, with the "materially adverse" rule of *Burlington N. & Santa Fe. Ry. v. White*). Because she cannot establish a prima facie case, Ms. Kitchens' claim for retaliation fails, as a matter of law.

In her Complaint, Ms. Kitchens alleges that Boeing retaliated against her "by placing her in the most hostile work environment, threatening her with a PIP, and forcing her resignation and constructive discharge." (Compl. ¶ 119). In other words, she is merely restating her hostile work environment and constructive discharge claims. However, as set forth above, Ms. Kitchens cannot establish those claims as a matter of law. Moreover, she cannot repackage those same claims and somehow establish a separate cause of action for retaliation. For the same reasons stated above, Boeing is entitled to summary judgment on Ms. Kitchens' retaliation claim.

Moreover, there is no evidence that Ms. Kitchens ever engaged in any protected activity under the ADA or the ADEA, nor has she demonstrated any causation between a complaint she made regarding disability or age and an adverse employment action she allegedly endured while she was employed at Boeing. *See Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012); *Buchhagen v. ICF Int'l, Inc.*, 650 F. App'x 824, 828 (4th Cir. 2016). There is no record of any complaint made by Ms. Kitchens regarding age or disability discrimination, and, therefore, she cannot prevail on her claim for retaliation under either of these statutes.

Similarly, Ms. Kitchens cannot establish a claim for retaliation based upon her gender. The only complaint she made during her tenure at Boeing concerning her gender pertained to a pay raise, which she ultimately agreed was not factually supported. (Exhibit G). Nevertheless, Ms. Kitchens cannot establish any causal connection regarding her pay complaint, which occurred while Mr. Parrinello was her supervisor, and her alleged constructive discharge related to an

impending PIP under a different supervisor. *See Boyer-Liberto*, 786 F.3d at 271-72 (4th Cir. 2015) (setting forth the elements for a retaliation claim under Title VII).

Because Ms. Kitchens cannot establish a claim for retaliation as a matter of law, Boeing is entitled to summary judgment on this claim.

## V.    CONCLUSION

For all of the foregoing reasons, Boeing's Motion for Summary Judgment should be GRANTED, as a matter of law, and Ms. Kitchens' claims should be dismissed.

s/ Molly Hughes Cherry
Molly Hughes Cherry          Fed ID No. 7067
MCherry@nexsenpruet.com
Melissa A. Fried          Fed ID No. 11194
MFried@nexsenpruet.com
NEXSEN PRUET, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC  29402
Phone:  843.577.9440
Facsimile:  843.414.8209

ATTORNEYS FOR DEFENDANT
THE BOEING COMPANY

November 16, 2017
Charleston, South Carolina

25