```
IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF SOUTH CAROLINA
          CHARLESTON DIVISION
```

| | |
|---|---|
| Cynthia Kitchens, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:16-cv-3723-BHH |
| v. | ) |
| | ) **ORDER** |
| The Boeing Company, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This matter is before the Court upon Plaintiff Cynthia Kitchens' ("Plaintiff" or "Kitchens") complaint, which alleges that Defendant The Boeing Company ("Defendant" or "Boeing") discriminated and retaliated against her pursuant to the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and Title VII of the Civil Rights Act of 1967 ("Title VII"). Plaintiff also alleges that she was subject to a hostile work environment on the basis of her age, sex, and disability and that she was constructively discharged. On November 16, 2017, Defendant filed a motion for summary judgment. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g), D.S.C., the matter was referred to a United States Magistrate Judge for preliminary determinations.

On July 25, 2018, United States Magistrate Judge Mary Gordon Baker issued a report and recommendation ("Report"), outlining the issues and recommending that the Court grant in part and deny in part Defendant's motion for summary judgment. Specifically, the Magistrate Judge recommended that the Court grant Defendant's motion as to all of Plaintiff's claims aside from her Title VII sex discrimination pay disparity claims.

Both parties filed objections to the Report, and Defendant filed a reply to Plaintiff's objections.

## **BACKGROUND**

Plaintiff was hired by Boeing at its North Charleston facility on June 18, 2010, as a Product Quality Manager K, which is a first line manager position. Boeing reclassified Plaintiff in May of 2011 as a Quality Multi-Family Manager K, which is also a first line manager position. Plaintiff was diagnosed with cancer in 2013 and missed work for treatments including chemotherapy.

In March of 2014, Plaintiff received a $900.00 raise. One of Plaintiff's male co-workers, who had a similar performance evaluation, received a raise of $2,900.00. Plaintiff was aware of this because she saw his raise and bonus paperwork.

Plaintiff alleges that she applied for fourteen positions at Boeing in 2015. Plaintiff makes specific allegations about three of those positions. First, Plaintiff alleges that in April of 2015 she applied for the position of Supplier Quality Manager but was not selected for the position. Instead, a male was selected for the position, and Plaintiff testified at her deposition that she knew the male who got the position; that he was qualified; and that she "agreed" with him being selected for the position. Plaintiff alleges that she asked senior manager Mike Tidemore the same month why she was not being promoted from her current position, and Tidemore discussed with Plaintiff that her "chemo fog" or her age could be reasons she was not being promoted.

Next, Plaintiff alleges that she applied for the position of Quality Manager K in July of 2015. According to the sworn declaration of Geoffrey Pizii, Boeing's Global Staffing Manager, Plaintiff was one of 336 applicants for the position. A Boeing recruiter

determined that Plaintiff's qualifications listed on her application were insufficient to warrant referral to the hiring manager. A male was selected for the position, and Plaintiff testified that she did not know anything about the person who received the position or his qualifications other than that he was male.

In August of 2015, Plaintiff applied for two open positions in Flight Line and Quality Assurance. Plaintiff stated that males in their early forties were hired for the positions. Both of the applicants chosen apparently told Plaintiff that she was more qualified than they were. Plaintiff testified that she understood she made the "short list" of the final twelve candidates for the two positions. Plaintiff also testified that she was told by her supervisor, Steve Parrinello, to be happy she did not get the positions because they required walking in the heat. Plaintiff interpreted this to mean she was not selected because of her age.

In the fall of 2015, Plaintiff and Tracy Darnell, a female contemporary first line manager in her department who worked a different shift, each made complaints to Boeing's human resources department about each other regarding a variety of issues. Plaintiff and Darnell both had the same level of supervisory authority within Boeing, but Darnell was only the in position temporarily. Plaintiff did not contend that any of her issues with Darnell were due to her sex, age, or disability. After an investigation, both employees were issued verbal warnings, the first step in Boeing's corrective action process. Darnell was subsequently moved to another department.

On March 22, 2016, Plaintiff contacted human resources at Boeing to report that her male co-workers were being paid more than she was despite performing the same. Plaintiff reported that her annual raise was $600.00 while male co-workers received a higher raise. Plaintiff reported that her former supervisor, Stephen Parrinello, had told her that everyone

3

had received a cut to their annual salary increase, but Plaintiff spoke to two male co-workers, one of whom said he did not receive any pay cut and the other of whom said Plaintiff's raise "seemed low." The human resources investigator who spoke to Plaintiff told her that her work history actually reflected an increase of $1,862.00 on March 4, 2016. Plaintiff told the human resources investigator that if the raise was $1,862.00 then she did not have any issue with it. The human resources investigator confirmed the raise amount, and Plaintiff told him she had no further concerns. Plaintiff testified that the investigator told her that an "adjustment" was made to give her the $1,862.00 raise.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 21, 2016, alleging discrimination based on age, sex, and disability. In her complaint, Plaintiff alleges that she was retaliated against for filing this charge of discrimination by being transferred to a new supervisor, Ron Pentz, whom she asserts told Plaintiff he was going to place her on a performance improvement plan ("PIP"). In June of 2016, after being informed that she was going to be placed on a PIP, Plaintiff took a preplanned vacation and additional time off, and when she returned to work, she was again told she was going to be placed on a PIP. Plaintiff was not actually placed on a PIP but felt like she was being threatened with it as retaliation for filing her first discrimination charge. On June 30, 2016, Plaintiff tendered her resignation by email and handwritten letter.

Plaintiff filed a second EEOC charge on July 25, 2016, alleging discrimination based on sex, age, disability, and hostile work environment. Plaintiff also alleged that she was transferred to Pentz's supervision as retaliation for her first EEOC charge.

## STANDARD OF REVIEW

**I.   The Magistrate Judge's Report**

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**II.   Federal Rule of Civil Procedure 56**

A court shall grant summary judgment if a party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

### I. Plaintiff's Complaint

Plaintiff's complaint alleges a number of causes of action under three federal statutes: the ADA, the ADEA, and Title VII. Specifically, the first cause of action alleges disability-based discrimination under the ADA; the second cause of action alleges age-based discrimination under the ADEA; the third cause of action alleges retaliation against Plaintiff because of her complaints of disability-based and age-based discrimination; the fourth cause of action alleges that the Plaintiff was subjected to a hostile work environment on the basis of her disability, age, and sex; and the fifth cause of action alleges sex-based discrimination in violation of Title VII.

### II. The Magistrate Judge's Report

In her Report, the Magistrate Judge first considered Plaintiff's ADA claims and determined that the record contains no evidence to support that Plaintiff is disabled within the meaning of the ADA, as even a life-threatening or terminal illness does not qualify as a disability under the ADA unless it substantially limits a major life activity, that is, "those activities that are of central importance to daily life and that the average person in the general population can perform with little or no difficulty." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 274 (4th Cir. 2004); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 60 (4th Cir. 1995).

Next, as to Plaintiff's claims that she was treated differently than other similarly situated employees on the basis of her race, sex, or disability, the Magistrate Judge determined that Plaintiff failed to set forth a prima facie case of discrimination with respect to her failure to hire/promote claims. However, with respect to her pay disparity claims, the Magistrate Judge found that Plaintiff did state a prima facie claim and recommended that the Court deny summary judgment as to those claims only.

The Magistrate Judge next considered Plaintiff's hostile work environment and constructive discharge claims and found that Plaintiff failed to present evidence sufficient to show that she was subjected to a hostile work environment or constructively discharged. In addition, the Magistrate Judge determined that Plaintiff failed to state a claim for retaliation. Accordingly, the Magistrate Judge recommended that the Court grant Defendant's motion for summary judgment as to all claims aside from Plaintiff's pay disparity claims.

### III. The Parties' Objections

Both parties filed written objections to the Magistrate Judge's Report. A review of Plaintiff's objections, however, indicates that they largely reiterate entire passages from her response in opposition to Defendant's motion for summary judgment and do not raise any specific objections sufficient to alter the Magistrate Judge's analysis. Plaintiff contends that the Magistrate Judge erred by failing to consider the evidence in the light most favorable to her, and she simply rehashes the factual arguments she made in response to Defendant's motion for summary judgment. However, for the reasons set forth more fully below, the Court finds that Plaintiff's objections fail to point to any specific *material* facts

sufficient to alter the Magistrate Judge's analysis.[1]  Although the Court finds Plaintiff's objections without merit, in the interest of completeness, the Court will consider the merits of each of Plaintiff's causes of action below.

Defendant also filed objections to the Magistrate Judge's Report, asserting that the Court should grant summary judgment on Plaintiff's pay disparity claims.  Because these objections raise new issues deserving of further consideration, the Court will consider the merits of Plaintiff's pay disparity claims below.

## IV.    The Court's Analysis

As the Magistrate Judge properly explained, a Plaintiff may establish a discrimination claim either by direct evidence or pursuant to the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision."  *Cassity v. Green*, 749 F. Supp. 2d 380, 402 (D.S.C. 2010) (citing *Taylor v. Va. Union. Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*), abrogated on other grounds, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).  In the absence of direct evidence of discrimination, a plaintiff may establish a claim using the *McDonnell Douglas* burden-shifting scheme, which requires a plaintiff to first demonstrate a prima facie case of discrimination.  If a plaintiff succeeds in establishing a prima facie case, then the burden shifts to the defendant to articulate some

---

[1] Moreover, the Court notes that although Plaintiff contends the Magistrate Judge ignored certain facts, it is clear from a review of the Report that the Magistrate Judge thoroughly considered all of the evidence of record.  For instance, Plaintiff asserts that the Magistrate Judge ignored her testimony that a manager told her that her "chemo fog" and age may have been reasons she was not selected for a position, but the Magistrate Judge specifically considered this evidence.  In all, the Court finds no merit to Plaintiff's contention that the Magistrate Judge failed to consider the evidence in the light most favorable to Plaintiff.

legitimate, nondiscriminatory reason for the adverse employment action.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *see also Hux v. City of Newport News*, 451 F.3d 311, 314-15 (4th Cir. 2006).  If the defendant does so, then the ultimate burden falls on the plaintiff to establish "that the legitimate reasons offered by the defendant were not its reasons, but were a pretext for discrimination."  *Reeves*, 530 U.S. at 142.  "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Id.* (quoting *Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

### A. Plaintiff's ADA Claims

Here, the Magistrate Judge first considered Plaintiff's ADA claims and determined that the record contains no evidence to support that Plaintiff is disabled within the meaning of the ADA.  As the Magistrate Judge noted, "[a]n individual is disabled within the meaning of the ADA . . . if he or she: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment."  *Davis v. Univ. of Carolina*, 263 F.3d 95, 99 (4 th Cir. 2001) (citing 42 U.S.C.A. § 12102(2) (1995) and 29 U.S.C.A. § 705(20)(B)).

Here, Plaintiff alleges that she was disabled due to her cancer and chemotherapy in 2013, but the Court agrees with the Magistrate Judge that there is no evidence that Plaintiff was impaired beyond the end of her treatment.  Importantly, as the Magistrate Judge explained, the term "'disability' does not include temporary medical conditions, even if those conditions require extended leaves of absence from work."  *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997) (citation and footnote omitted).  And even

a life-threatening or terminal illness does not qualify as a disability under the ADA unless it substantially limits a major life activity, that is, "those activities that are of central importance to daily life and that the average person in the general population can perform with little or no difficulty." *Rohan*, 375 F.3d at 274. Although Plaintiff alleges that as a cancer survivor, she could not be stressed because stress caused her to have "bathroom emergencies" and "gas issues," after a review of the record, the Court agrees with the Magistrate Judge that the only evidence that Plaintiff suffered these symptoms is her affidavit, and there is no evidence to show that these issues *substantially limited her major life activities to render her disabled under the ADA*. Moreover, the Court agrees with the Magistrate Judge that there is not sufficient evidence to show that Defendant actually regarded Plaintiff as being disabled. Lastly, with respect to Plaintiff's allegation that she was transferred to Pentz's supervision in retaliation to cause her stress, the Court also agrees with the Magistrate Judge that the major life activity of working is not substantially limited merely because a personality conflict with a supervisor caused her stress. *See Howell v. Holland*, No. 4:13-cv-295-RBH , 2015 WL 751590, at *16 (D.S.C. Feb. 23, 2015) (citing *Schneiker v. Fortis Ins. Co.*, 200 F. 3d 1055, 1062 (7th Cir. 2000) ("[Not being able to work with a particular individual or supervisor does not substantially limit the major life activity of working."); *Metro v. Lewis Gale Clinic*, No. 7:01-cv-936, 2002 WL 32833260, at *4 (W.D. Va. April 26, 2002), aff'd 48 Fed. App'x. 456 (4th Cir. 2002) (noting that "the major life activity of working is not 'substantially limited' if a plaintiff cannot work under a certain supervisor because of anxiety and stress"). As such, the Court adopts this portion of the Magistrate Judge's Report and grants Defendant's motion for summary judgment with respect to Plaintiff's ADA claims.

### B. Plaintiff's Disparate Treatment Claims

The Magistrate Judge next considered Plaintiff's disparate treatment claims, noting that a disparate treatment claim "is the most easily understood type of discrimination. The employer simply treats someone less favorably than others because of [her] race, color, religion, sex, or national origin." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977).

As to Plaintiff's claim that Defendant failed to promote or hire her to the positions for which she applied, the Magistrate Judge determined that Plaintiff failed to establish a prima facie case. To state a prima facie claim of discriminatory failure to hire, a plaintiff must prove: (1) that she is a member of a protected class; (2) that she applied for the position; (3) that she was qualified for the position; and (4) that her application was rejected under circumstances that give rise to an inference of unlawful discrimination. *Byers v. Alamance Cty.*, 633 F. App'x 135, 136 (4th Cir. 2016) (citing *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005)).

Here, Plaintiff presented evidence specific to three positions for which she applied and was not hired. As to all three positions, however, the Court agrees with the Magistrate Judge that Plaintiff failed to provide any evidence that her application was denied under circumstances that give rise to an inference of unlawful discrimination. Specifically, as to the Superior Quality Manager position Plaintiff applied for in April of 2015, Plaintiff conceded in her deposition that the person who received the position was qualified and she "agreed" with his selection. Next, with respect to the Quality Manager K position that Plaintiff applied for in July of 2015, Plaintiff offered no evidence regarding this position other than that the person selected was male, whereas Defendant offered evidence showing that

11

Plaintiff was one of 336 applicants and that Plaintiff did not make the initial cut of applicants based on her qualifications. As the Magistrate Judge properly noted, merely pointing out that the person who received the job is male does not state a prima facie case. Finally, with respect to the two positions for which Plaintiff applied in August of 2015, Plaintiff again failed to offer any evidence to indicate that discrimination was the reason she was not selected for these positions. Although Plaintiff contends that the individuals who received the positions were males in their early forties, and she testified that both males told her she should have gotten the positions, the opinions of these individuals is not relevant to the Court's analysis; rather, it is the opinion of the decision maker that matters. Here, even if Plaintiff could state a prima facie claim, the fact remains that Defendant offered evidence to show that Plaintiff was one of 125 applicants and that a four-year degree, which Plaintiff does not have, was preferred for the position. Plaintiff has offered no evidence to show that Defendant's non-discriminatory reason for hiring others–namely, that they were more qualified–was merely a pretext for discrimination. Accordingly, the Court agrees with the Magistrate Judge that Defendant is entitled to summary judgment on Plaintiff's failure to hire/promote claims, and the Court adopts this portion of the Magistrate Judge's Report.

Next, however, the Magistrate Judge recommended that the Court deny summary judgment as to Plaintiff's pay discrimination claims. Specifically, the Magistrate Judge found that Plaintiff established a prima facie case of pay discrimination based on her assertions (1) that she received a $900.00 raise in March of 2014 when a male co-worker with a similar performance evaluation received a $2,900.00 raise; and (2) that she Plaintiff received a $600.00 raise in March of 2016 when male co-workers received higher raises. Because Boeing did not offer a non-discriminatory reason to rebut Plaintiff's prima facie

case, the Magistrate Judge determined that a genuine issue of material fact existed and recommended that the Court deny summary judgment as to Plaintiff's pay disparity claims.

In its objections, Boeing asserts that the Magistrate Judge erred in recommending that the Court deny summary judgment as to these claims for several reasons. First, Boeing asserts that Plaintiff's complaint does not assert any allegation or otherwise raise any issue regarding any alleged pay disparity in 2016. In addition, Boeing points out that Plaintiff never filed a charge of discrimination regarding any alleged issue or complaint over a raise in 2016, and nowhere does she assert otherwise. Next, with respect to Plaintiff's pay disparity claim from 2014, Boeing asserts that Plaintiff failed to timely file or exhaust her administrative remedies as to this claim. Boeing points out that Plaintiff filed her first charge of discrimination on January 21, 2016, and Title VII requires someone to bring a charge of discrimination within 300 days of the alleged discriminatory employment practice. 42 U.S.C.A. § 2000e-5(e)(1). Because Plaintiff failed to meet the 300-day requirement, she failed to exhaust her administrative remedies, and Defendant asserts that it is entitled to summary judgment.

After a thorough review of the record, the Court agrees with Defendant. First, the Court finds that Plaintiff's complaint does not assert any allegation pertaining to pay discrimination or disparity based on her raise in 2016. In addition, it appears that Plaintiff did not file a charge of discrimination regarding her raise in 2016, and Boeing asserted Plaintiff's failure to timely file a charge as a defense to her claims. Because "factual allegations made in formal litigation must correspond to those set forth in the administrative charge," the Court agrees with Defendant that Plaintiff failed to exhaust her administrative remedies on this issue and Defendant is entitled to summary judgment on any claim

pertaining to a raise in 2016.  *Workman v. Bill M.*, No. 6:17-972-RBH-KFM, 2017 WL 4863055, at *4 (D.S.C. Aug. 29, 2017), *report and recommendation adopted*, No. 6:17-972-RBH, 2017 WL 4843968 (D.S.C. Oct. 26, 2017) (citing 42 U.S.C. § 12117(a)).

Likewise, with respect to Plaintiff's claim regarding her raise in 2014, it appears that Defendant is correct that she failed to exhaust her administrative remedies inside the statutory time period.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (finding that only those discrete acts of discrimination that occurred within the 300-day filing period are actionable); *Fisher v. Securitas Sec. Servs. USA Inc.*, No. 4:08-cv-01634-RBH, 2010 WL 568234, at *3 (D.S.C. Feb. 12, 2010) (granting summary judgment where a plaintiff's discrimination claims under Title VII and the ADEA occurred prior to 300 days before the filing of her charge of discrimination).  Because the Court agrees with Defendant, the Court sustains Defendant's objections and declines to adopt the portion of the Magistrate Judge's Report that recommends denying summary judgment on Plaintiff's pay disparity claims.  The Court instead finds that Defendant is entitled to summary judgment on these claims, which were either (1) not raised in Plaintiff's complaint; or (2) not properly exhausted.

### C. Plaintiff's Hostile Work Environment and Constructive Discharge Claim

To state a claim for a hostile work environment under Title VII, the ADA, or the ADEA, a plaintiff must show: (1) that she was subjected to unwelcome harassment; (2) the harassment was based on her sex, age, or disability; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

Here, the Magistrate Judge determined that Plaintiff failed to offer evidence to show

that the alleged hostility she experienced was based on her age, sex, or disability. As to Plaintiff's interactions with Darnell, the Magistrate Judge noted that Plaintiff conceded that those issues did not have anything to do with her age, sex, or disability. Nevertheless, Plaintiff asserts that her issues with Darnell were retaliation because she complained about discrimination, but the Court agrees with the Magistrate Judge that the record contains no evidence to support this theory. Moreover, both Plaintiff and Darnell were disciplined for their interactions with each other.

In addition, with respect to Plaintiff's claim that she was subjected to a hostile work environment when she was transferred to Mr. Pentz's supervision, the Court also agrees with the Magistrate Judge that Plaintiff's mere opinions are insufficient to state a claim. Although Plaintiff claims that Pentz had the reputation of discriminating against older employees, this conclusory allegation is not sufficient. Plaintiff claims that Pentz threatened her with unwarranted discipline in the form of a PIP, but Plaintiff was not actually placed on a PIP. Moreover, she has not offered any evidence that she was going to be placed on a PIP for any reason other than her performance, and two of Plaintiff's supervisors actually testified that Plaintiff was going to be placed on a PIP because of her deficient performance. As the Magistrate Judge noted, Plaintiff complains that her work environment was abusive, but she does not elaborate or present any evidence to show that she was the target of open hostility *because of* her protected status. Without this necessary "but for" evidence, the Court agrees with the Magistrate Judge that she has failed to establish her hostile work environment claim. *See Peuschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009) (noting that for a plaintiff to show that alleged harassment was based on a protected class, the plaintiff must show that "*but for* the employee's [protected class] . . . or protected

activity, he or she would not have been the victim of the discrimination") (emphasis added).

In addition, the Court agrees with the Magistrate Judge that Plaintiff has failed to establish a hostile work environment constructive discharge claim. Because such a claim encompasses elements of a hostile work environment claim, and because the Court finds that Plaintiff has failed to establish those elements, the Court also adopts this portion of the Magistrate Judge's recommendation and finds that Defendant is entitled to summary judgment on Plaintiff's hostile work environment constructive discharge claim. *See Cronin v. S.C. Dep't of Corrs.*, No. 3:11-cv-471-MBS-SVH, 2013 WL 5315983, at *6 (D.S.C. Sept. 20, 2013) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)) ("A showing of a hostile work environment 'is a necessary predicate' to establishing a hostile work environment constructive discharge claim.").

### D. Plaintiff's Retaliation Claim

To state a prima facie claim of retaliation, a plaintiff generally must show: (1) that she engaged in a protected activity; (2) that the employer retaliated against her; and (3) there was a causal link between the protected activity and the asserted adverse action. *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Here, Plaintiff alleges that she was retaliated against by being placed in a hostile work environment, by being threatened with a PIP, and by forcing her to resign by constructive discharge. The Court has already determined that Plaintiff has failed to establish hostile work environment or constructive discharge claims, and thus, the Court need only consider whether the threat of being placed on a PIP is sufficient to state a claim for retaliation.

Ultimately, after a review of the evidence of record, the Court agrees with the Magistrate Judge that it is not sufficient to state a claim because Plaintiff has failed to offer any evidence to show a connection between her protected activity and the threat of being placed on a PIP other than her own conclusory allegations. In all, assuming for the sake of argument that the threat of being placed on a PIP constitutes an adverse employment action, the Court still finds no evidence to create a genuine issue of material fact as to Plaintiff's claim that she was transferred to Pentz's supervision or threatened with a PIP as retaliation for her protected activity. Accordingly, the Court adopts this portion of the Magistrate Judge's Report.

## **CONCLUSION**

For the foregoing reasons, the Court adopts the Magistrate Judge's Report (ECF No. 52) in all respects except as to as to Plaintiff's Title VII sex discrimination pay disparity claims; the Court overrules Plaintiff's objections (ECF No. 55); the Court sustains Defendant's objections (ECF No. 54); and the Court grants Defendant's motion for summary judgment (ECF No. 31) in its entirety.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
The Honorable Bruce Howe Hendricks
United States District Judge

September 19, 2018
Charleston, South Carolina